# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| MICHAEL THORSON and MARILYN MUELLER, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-1364 **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **Jury Trial Demanded** |
| UNITED COLLECTION BUREAU, INC., | |
| Defendant. | |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Michael Thorson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Marilyn Mueller is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

6.     Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendant sought to collect from each Plaintiff was incurred as a result of a consumer transaction.

7.     Defendant United Collection Bureau, Inc. ("UCB") is a foreign corporation with its principal offices located at 5620 Southwyck Boulevard, Toledo, OH 43614.

8.     UCB is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

9.     UCB is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.     UCB is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

11.     UCB is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

### *Facts Related to Plaintiff Thorson*

12.     On or about October 26, 2018, UCB mailed a debt collection letter to Plaintiff Thorson regarding an alleged debt associated with a "Sears" store-branded credit.  A copy of this letter is attached to this complaint as Exhibit A.

13.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, which was used only for personal, family, and household purposes, including the purchase of goods at Sears stores.

14.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Thorson inserted by computer.

2

15.     Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

16.     Upon information and belief, Exhibit A is the first written communication UCB mailed to Plaintiff Thorson regarding the alleged debt referenced in Exhibit A.

17.     Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

18.     Exhibit A also includes the following representation:

| Creditor: | CITIBANK, N.A. |
| Regarding: | SEARS GOLD MASTERCARD |
| Last Four Digits of Creditor Account Number: | XXXXXXXXXXXX5964 |
| United Collection Bureau, Inc. Reference Number: | ██8450 |
| New Balance: | $4986.84 |
| Minimum Payment Due: | $828.00 |

19.     Additionally, Exhibit A features a remittance slip, which includes the following representation:

24000270000LINE:

**PLEASE RETURN THIS PORTION WITH PAYMENT. DO NOT ATTACH CHECK TO STUB.**
**PLEASE MAKE YOUR PAYMENT PAYABLE TO CITIBANK**

| Creditor: | CITIBANK, N.A. |
| Regarding: | SEARS GOLD MASTERCARD |
| Last Four Digits of Creditor Acct. Number: | XXXXXXXXXXXX5964 |
| New Balance: | $4986.84 |
| Minimum Payment Due: | $828.00 |
| United Collection Bureau, Inc. Reference No: | ██8450 |
| United Collection Bureau, Inc. Telephone No: | 1-800-394-7560 |

━━━━━━━━ REMIT TO: ━━━━━━

United Collection Bureau, Inc.
PO BOX 140310
TOLEDO OH 43614

3

20.     Finally, Exhibit A includes the following representation:

> As of the date of this letter, you owe the above stated New Balance amount. Because of interest and/or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after your payment is received. For further information, you may write to our office or call the telephone number within this communication.

21.     By stating "you owe the above stated New Balance amount. Because of interest and/or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount show above, an adjustment may be necessary…" and including the full balance of Plaintiff Thorson's alleged debt on the remittance slip, Exhibit A is unclear whether UCB is collecting the entire $4,986.84 balance or just the $828.00 that was represented to be the "Minimum Payment Due."

22.     It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Whichever number UCB is truly collecting, it need only state that amount in the letter.

23.     The different amounts on Exhibit A render Exhibit A confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount UCB was actually attempting to collect.

24.     Plaintiff Thorson read Exhibit A.

25.     Plaintiff Thorson was confused and misled by Exhibit A.

26.     The unsophisticated consumer would be confused and misled by Exhibit A.

27.     Plaintiff Thorson had to spend time and money to investigate Exhibit A and the possible consequences of responding to Exhibit A.

4

### *Facts Related to Plaintiff Mueller*

28.     On or about September 4, 2019, UCB mailed a debt collection letter to Plaintiff Mueller regarding an alleged debt owed to "JPMorgan Chase Bank, N.A."  A copy of this letter is attached to this complaint as Exhibit B.

29.     Upon information and belief, the alleged debt referenced in Exhibit B was incurred by use of a credit card, which was used only for personal, family, and household purposes.

30.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Mueller inserted by computer.

31.     Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

32.     Upon information and belief, Exhibit B is the first written communication UCB mailed to Plaintiff Mueller regarding the alleged debt referenced in Exhibit A.

33.     Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

34.     Exhibit B also includes the following representation:

> If you are interested in a reduction of the balance, we are authorized to offer you a settlement for $2073.34. We are not obligated to renew this offer.

35.     Exhibit B states that UCB is "not obligated to renew this offer."

36.     Exhibit B does not provide a settlement expiration date upon which the offer would need to be renewed.

37.     Upon information and belief, the statement that UCB is "not obligated to renew this offer," is a material false, deceptive, and misleading statement.

38.     In the absence of an expiration date, the unsophisticated consumer would understand a statement that the debt collector is "not obligated to renew this offer," to mean that UCB could, and would, rescind the settlement offer at any time and without notice.

39.     Upon information and belief, the debtor can settle the account for $2,073.34, or less, at any time.

40.     In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language:  "We are not obligated to renew this offer."  The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d 769 at 775-76.

41.     While Exhibit B tracks this safe-harbor language, without an expiration date, the language does not have its intended effect.

42.     As a practical matter, the unsophisticated consumer is not an FDCPA lawyer.  She does not know that the purpose of the statement that "we are not obligated to renew this offer" is to make her "realize that there is a renewal possibility but that it is not assured."

43.     Instead, where the debt collector states that it is not obligated to renew an offer but does not include an expiration date by which payment must be made, the unsophisticated consumer would understand the safe-harbor language to mean that the offer was subject to revocation.

44.     The unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language if it will rescind the offer.

45.     Without an expiration date, the unsophisticated consumer would interpret a debt collector's statement that it is "not obligated to renew" as an implied threat to revoke the settlement offer at any time and without notice.

46.     Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances.  *E.g., Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor  . . . for the kind of suit Bartlett has brought and now won.  The qualification 'for the kind of suit that Bartlett has brought and now won' is important.  We are not certifying our letter

7

against challenges based on other provisions of the statute; those provisions are not before us.");
*see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill.
Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe
harbor language where the Seventh Circuit expressly limited the reach of the language to
different claims).

47.     The safe-harbor language used in <u>Exhibit B</u> was created specifically for cases
where a debt collection letter stated a settlement date certain.  Without a date certain, the
language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability.  *E.g.,*
*Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *9 (E.D. Wis. Apr. 26, 2018).

48.     Moreover, UCB's failure to provide an expiration date for its settlement offer is a
material misrepresentation because it misleads the unsophisticated consumer about a material
term of the settlement offer.  *Evory*, 505 F.3d at 775-76; *see also Smith v. Nat'l Enter. Sys., Inc.*,
2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's
purported time-sensitive settlement offer included an obviously misprinted expiration date that
had already passed, "any consumer receiving [it] would be left to wonder about a material term
of the offer, that is, the deadline for acceptance.").

49.     The unsophisticated consumer, not knowing when the settlement offer expired,
would feel intimidated into paying.  *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th
Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the
recipient feel that he is in over his head and had better pay up rather than question the demand for
payment.").

50.     Moreover, providing the settlement offer alongside the validation notice
contradicts and overshadows the consumer's validation rights.

51.     The settlement offer in Exhibit B is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

52.     The unsophisticated consumer, unsure when the settlement offer in Exhibit B expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment.  Thus, there is an apparent contradiction between the settlement offer and the validation notice.

53.     The unsophisticated consumer would be confused about whether the settlement offer in Exhibit B would require her to forego her rights to validate the debt.

54.     The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

55.     The plain language of Exhibit B is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

56.     Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit B, under the terms of Exhibit B, the debt collector might:

     a.  Hold the payment in escrow pending verification of the debt;

     b.  Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

9

c.  Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

57.    Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit.  *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

58.    Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit.  *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation.  In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

59.    The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

60.    The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter.  If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

61.    Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the

10

consumer had effectively made the settlement payment. By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

62. Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in <u>Exhibit B</u>.

63. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a). *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").

64. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

65. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

66. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in <u>Exhibit B</u>. The unsophisticated consumer would believe that the settlement offer would expire before the debt collector provides verification and

11

would be left with little or no time to review the verification and determine whether to accept the settlement offer.

67.     The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

68.     Defendant's "explanatory language" in Exhibit B, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997), does not clarify how---or even whether---a debtor may both dispute the debt and take advantage of the settlement.

69.     Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

70.     Plaintiff Mueller read Exhibit B.

71.     Plaintiff Mueller was confused and misled by Exhibit B.

72.     The unsophisticated consumer would be confused and misled by Exhibit B.

73.     Plaintiff Mueller had to spend time and money to investigate Exhibit B and the possible consequences of responding to Exhibit B.

### *The FDCPA*

74.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist.

12

LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA

13

statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

75. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

76. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, Inc., 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount

owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

77.     15 U.S.C. § 1692e generally prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."

78.     15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

79.     15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

80.     15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

81.     15 U.S.C. § 1692g(a) states:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

82.     The failure to disclose the information required by 15 U.S.C. § 1692g(a)  in a non-confusing manner *per se* violates the FDCPA. No additional materiality inquiry is necessary. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016).

83.     15 U.S.C. § 1692g(b) states, in relevant part: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

### *The WCA*

84.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

85.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

86.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

87.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives."  *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions

16

under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

88.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

89.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

90.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

91.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

92.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

93.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

94.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

95.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

96.     The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

97.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

98.     Count I is brought on behalf of Plaintiff Thorson.

99.     By stating "…you owe the New Balance amount. Because of interest and/or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount show above, an adjustment may be necessary…" and including the full balance of Plaintiff Thorson's alleged debt on the remittance slip, Exhibit A is unclear whether UCB is collecting the entire balance or just the "Minimum Payment Due."

18

100. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1).

## COUNT II – WCA

101. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102. Count II is brought on behalf of Plaintiff Thorson.

103. By stating "…you owe the New Balance amount. Because of interest and/or other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount show above, an adjustment may be necessary…" and including the full balance of Plaintiff's alleged debt on the remittance slip, Exhibit A violates the FDCPA.

104. UCB is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

105. Exhibit A similarly violates the FDCPA.

106. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## COUNT III – FDCPA

107. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108. Count III is brought on behalf of Plaintiff Mueller.

109. By stating "we are not obligated to renew this offer" alongside a settlement offer with no expiration date, Exhibit B includes representations which are false, deceptive, and misleading, falsely threaten to revoke such settlement offer, and overshadow the validation notice.

19

110.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692g(b).

## COUNT IV – WCA

111.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

112.     Count IV is brought on behalf of Plaintiff Mueller.

113.     By stating "we are not obligated to renew this offer" alongside a settlement offer with no expiration date, Exhibit B includes representations which falsely threaten to revoke such settlement offer.

114.     UCB is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

115.     Exhibit B similarly violates the FDCPA.

116.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(L).

## CLASS ALLEGATIONS

117.     Plaintiffs bring this action on behalf of a two classes.

118.     Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between September 18, 2018 and September 18, 2019, inclusive, (e) that was not returned by the postal service. Plaintiff Thorson is the proposed representative of Class I.

119.     Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action,

(c) seeking to collect a debt for personal, family, or household purposes, (d) between September 18, 2018 and September 18, 2019, inclusive, (e) that was not returned by the postal service. Plaintiff Mueller is the proposed representative of Class II.

120.    Each class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each class.

121.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant complied with the FDCPA and WCA.

122.    Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

123.    Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

124.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

125.    Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  September 18, 2019

**ADEMI & O'REILLY, LLP**

By:    /s/ Mark A. Eldridge

       John D. Blythin (SBN 1046105)
       Mark A. Eldridge (SBN 1089944)
       Jesse Fruchter (SBN 1097673)
       Ben J. Slatky (SBN 1106892)
       3620 East Layton Avenue
       Cudahy, WI 53110
       (414) 482-8000
       (414) 482-8001 (fax)
       jblythin@ademilaw.com
       meldridge@ademilaw.com
       jfruchter@ademilaw.com
       bslatky@ademilaw.com